UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ROLEX WATCH U.S.A., INC.,**

**Plaintiff,**

vs.                                                           **Case #: 8:05-CV-1715-T-27MAP**

**MICHAEL DAVID BONNEY, DAVID
SKANDALARIS and ALBERT FARAJIAN
as individuals and d/b/a CLUB REPLICA.COM,
REPLICAS, INC., REPLICAS, INC.,
PRECISEKNOCKOFFS.COM,
GRADEONEWATCHES.COM, and
GRADEONEREPLICAS.COM,**

**Defendant.**

_____/

## ORDER

**BEFORE THE COURT** are Plaintiff Rolex Watch U.S.A., Inc.'s Motion for Summary

Judgment (Dkt. 80), to which Defendant Albert Farajian has responded (Dkt. 89), and Defendant

Albert Farajian's Cross Motion for Entry of Judgment of Settlement (Dkt. 88), to which Plaintiff

Rolex Watch U.S.A., Inc. has responded (Dkt. 90).[1]  Upon consideration, Plaintiff's Motion for

Summary Judgment and Defendant's Cross Motion for Entry of Settlement (Dkt. 88) are **DENIED**.

*Plaintiff's Motion for Summary Judgment*

Plaintiff, Rolex Watch U.S.A., alleges that Defendant Albert Farajian is individually liable

for Trademark Counterfeiting and Trademark Infringement, in violation of 15 U.S.C. § 1114; False

Designations of Origin, False Descriptions and Representations, in violation of 15 U.S.C. § 1125(a);

Trademark Dilution, in violation of Fla. Stat. § 495.131 and Florida common law; and Common Law

---

[1]Albert Farajian is the only remaining defendant in this action. The other defendants have been voluntarily
dismissed. (Dkts. 47, 73).

1

Unfair Competition. (Dkts. 1, 80).  Specifically, Plaintiff alleges that Defendant sold, offered for

sale, distributed, promoted and advertised counterfeit Rolex watches through the clubreplica.com

website. (Dkts. 1, 80).

Defendant is self-employed as a professional poker player. (Dkt. 52-2, Farajian Depo. at 11).

Defendant does not recall how he met the people who ran the clubreplica.com website. (Farajian

Depo. at 32-33).[2]  Defendant worked for the people who ran the clubreplica.com website for

approximately one year. (Farajian Depo. at 21).  Defendant was paid approximately $200 per month,

in cash, for his work. (Farajian Depo. at 21).  Ninety percent of his work for clubreplica.com entailed

answering phone calls to his cell phone from clubreplica.com customers. (Farajian Depo. at 19-20,

22).  Defendant received approximately one to ten calls per day. (Farajian Depo. at 24).  He was

instructed to reassure callers, who were often angry, that their merchandise was on its on way and

that the merchandise was good quality. (Farajian Depo. at 20, 41).  Defendant told the people who

ran the website that calls were coming in, but did not give them the names of specific callers.

(Farajian Depo. at 20-21). Defendant contends that he eventually stopped taking phone calls because

he was "too confused about everything to understand what to tell the customers and [he] was tired

of getting screamed at for 200 bucks a month."  (Farajian Depo. at 26).

On two occasions, which comprised the other ten percent of his work for clubreplica.com,

Defendant was paid $100 to go to downtown Los Angeles to buy merchandise.  (Farajian Depo. at

22).  He was given cash and a list which he took to a wholesaler, who gave him a bag of watches in

return. (Farajian Depo. at 23).  Defendant did not look at the list or in the bag, but he knew he was

buying jewelry. (Farajian Depo. at 23, 35).  After receiving the bag, Defendant was taken by car to

hand the bag over to people who ran the clubreplica.com website.  (Farajian Depo. at 25).  Defendant

---

[2]Defendant refused to provide the identities of the people who ran the clubreplica.com website and the Court denied Plaintiff's motion to compel him to do so. (Dkt. 59)

claims that he did not initially understand that clubreplica.com was selling counterfeit merchandise, but admits that he continued to work for the people who ran the website after he realized that they were selling counterfeit merchandise. (Farajian Depo. at 32-33).

Defendant contends that he cannot be subject to liability because he is not the "moving, active, and conscious force behind the alleged infringement." (Dkt. 89). An individual may be personally liable for trademark infringement only if he "actively and knowingly caused the infringement." *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). "The individual liability standard does not ask whether the individual participated or engaged in some infringing act; instead, it asks whether he actively participated as a moving force in the *decision* to engage in the infringing acts, or otherwise caused the infringement as a whole to occur." *Id.* at 1478 n. 8 (noting that merely selling counterfeit items cannot turn a defendant into a moving, active and conscious force, as that would render the entire sales force personally liable).

Based on the record evidence of Defendant's limited role in the alleged infringement, a reasonable jury could find that Defendant was not the moving force in the decision to engage in infringement and did not cause the infringement to occur. *See Omega, S.A. v. Giftland Co.*, No. 03-CIV-5808 (WJM), 2005 WL 1925791 (D.N.J. Aug. 11, 2005) (plaintiff's motion summary judgment denied where defendant was involved in processing payments for counterfeit watches purchased online and provided check depositing service to website owner in exchange for 10% of revenues). Accordingly, Plaintiff's motion for summary judgment is **DENIED**.

### *Defendant's Cross Motion for Judgment of Settlement*

Defendant contends that the parties have reached a settlement. According to Defendant, Plaintiff has agreed to a dismissal with prejudice and general release of its claims in exchange for

$2,000.00. Plaintiff contends that no agreement has been reached due to Defendant's failure to agree to a consent judgment.

Although settlements are favored and will be enforced when possible, there must be a valid agreement in order for a court to enforce a settlement. *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985); *Bateski v. Ransom*, 658 So. 2d 630, 631 (Fla. 2d DCA 1995). Whether the parties entered into a valid settlement agreement is governed by state contract law. *E.g., Hayes v. Nat'l Serv. Indus.*, 196 F.3d 1252, 1253 (11th Cir. 1999); *Baratta v. Homeland Housewares, LLC*, No. 05-60187-CIV, 2007 WL 2668585, at *2 (S.D. Fla. June 14, 2007) (citing *Schwartz v. Fla. Bd. of Regents*, 807 F.2d 901 (11th Cir. 1987); *Robbie*, 469 So. 2d at 1385). "The party seeking to enforce a settlement agreement bears the burden of showing the opposing party assented to the terms of the agreement." *Specialty Disease Mgmt. Servs., Inc. v. Aids Healthcare Found.*, No. 3:01-cv-1353-J-32TEM, 2003 WL 25608009, at *3 (M.D. Fla. Oct. 21, 2003) (citations omitted); *see also Long Term Mgmt., Inc. v. Univ. Nursing Care Center*, 704 So. 2d 669, 673 (Fla. 1st DCA 1997); *Bateski*, 658 So. 2d at 631; *Williams v. Ingram*, 605 So. 2d 890, 893 (Fla. 1st DCA 1992); "The moving party must establish a meeting of the minds or mutual or reciprocal assent to a certain and definite proposition." *Ingram*, 605 So. 2d at 893 (citing *Goff v. Indian Lake Estates, Inc.*, 178 So. 2d 910 (Fla. 2d DCA 1965)); *see also Bateski*, 658 So. 2d at 631. "To compel enforcement of a settlement agreement, its terms must be sufficiently specific and mutually agreed upon as to every essential element." *Aids Healthcare Found.*, 2003 WL 25608009, at *3.

Although it is undisputed that the parties agreed to the settlement amount, Defendant has not established a meeting of the minds as to all essential terms of the settlement agreement. On May 23, 2007, the parties engaged in settlement discussions. (Dkt. 88-2, Mariani Aff. ¶ 3; Dkt. 90-2, Carlin

4

Aff. ¶ 3). According to Defendant's counsel, the parties agreed "to a settlement of the claims against Mr. Farajian in exchange for payment of $2,000.00 to the plaintiff" and "to attempt to effect the exchange of consideration within 30 days." (Mariani Aff. ¶ 3). On May 24, 2007, Defendant's counsel sent an email to Plaintiff's counsel stating:

> I write to confirm our agreement of settlement on behalf of our respective clients that all claims in the referenced matter that were brought or would have been brought against Albert Farajian shall be dismissed with prejudice and a general release provided by your client to him in exchange for payment to your client of $2,000.00. The parties will attempt to complete all the paperwork and transfers attendant to the settlement within 30 days.

(Mariani Aff. Ex. 1; Dkt. 90-3). Plaintiff's counsel did not respond to Defendant's counsel's email. (Mariani Aff. ¶ 7). On June 21, 2007, Plaintiff's counsel forwarded Defendant's counsel a consent judgment for the parties to approve and submit to the Court. (Mariani Aff. ¶ 9; Carlin Aff. ¶ 8). Defendant contends that the June 21, 2007 email was the first mention of a consent judgment. (Mariani Aff. ¶ 10). Plaintiff contends that execution of a consent judgment is "paperwork attendant" to the settlement and that Plaintiff's counsel understood the agreement to include a consent judgment. (Carlin Aff. ¶ 4, 6). Plaintiff also contends that Defendant's counsel's May 24, 2007 email was the first reference to its execution of a general release. (Carlin Aff. ¶ 5).

A trial court's finding of a meeting of the minds must be supported by competent substantial evidence. *Long Term Mgmt., Inc.*, 704 So. 2d at 673; *Spiegel v. Allen Homes, Inc.*, 834 So. 2d 295, 287 (Fla. 4th DCA 2002); *Smiley v. Greyhound Lines, Inc.*, 704 So. 2d 204 (Fla. 5th DCA 1998). Defendant's counsel contends that during their settlement conference the parties agreed "to a settlement of the claims against Mr. Farajian in exchange for payment of $2,000.00 to the plaintiff" and "to attempt to effect the exchange of consideration within 30 days." (Mariani Aff. ¶ 4). Notably,

Defendant's counsel does not contend that any discussions were had, or that any agreement was reached, regarding the type of release which would be executed. Plaintiff's counsel avers that specific details as to the required paperwork was not discussed. (Carlin Aff. ¶ 4). In addition, Plaintiff's counsel's failure to respond to Defendant's counsel's May 24, 2007 email is insufficient to establish Defendant's assent to a general release or a meeting of the minds that a consent judgment was not required. *See Long Term Mgmt., Inc.*, 704 So. 2d at 675 (silence as to issue of releases insufficient to demonstrate mutual assent); *Bateski*, 658 So. 2d at 631 (no agreement as to type of release where letter reminding opposing party that settlement was conditioned on execution of "enclosed release only" was not answered immediately). Defendant has not proffered competent substantial evidence establishing a meeting of the minds that Plaintiff would execute a general release and that Defendant would not execute a consent judgment. *See Bateski*, 658 So. 2d at 632 (type of release to be given was an essential term of settlement). Absent evidence that the parties mutually agreed on every essential term of the settlement, the parties' agreement cannot be enforced.

Accordingly, it is ORDERED AND ADJUDGED that

1) Plaintiff's Motion for Summary Judgment (Dkt. 80) is **DENIED**.

2) Defendant Albert Farajian's Cross Motion for Entry of Settlement (Dkt. 88) is **DENIED**.

**DONE AND ORDERED** in chambers this 28th day of February, 2008.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record

6